1  [*Counsel listed on next page*]

2

3  **UNITED STATES DISTRICT COURT**

4  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

5

6  **BETHANY MENDEZ**, an individual; **LINDA LEIGH- DICK**, an individual; **AUDREY STEWART**, an individual; **SCOTT CARPENTER**, an individual; and **ANGELA WILLIAMS**, an individual, on behalf of themselves and all others similarly situated,

7

8

9      Plaintiffs,

10

    v.

11

12  **CALIFORNIA TEACHERS ASSOCIATION**, a California corporation; **NATIONAL EDUCATION ASSOCIATION**, a nonprofit corporation; **FREMONT UNIFIED DISTRICT TEACHERS ASSOCIATION, INC.**, a nonprofit corporation; **VALLEY CENTER-PAUMA TEACHERS ASSOCIATION**; **HAYWARD EDUCATION ASSOCIATION-CTA-NEA**, a California corporation; **TUSTIN EDUCATORS ASSOCIATION**, a nonprofit corporation; **ASSOCIATED CHINO TEACHERS**; **KIM WALLACE**, in her official capacity as Fremont Unified School District Superintendent; **RON MCCOWAN**, in his official capacity as Valley Center-Pauma Unified School District; **MATT WAYNE**, in his official capacity as Hayward Unified School District Superintendent; **GREGORY FRANKLIN**, in his official capacity as Tustin Unified School District Superintendent; **NORM ENFIELD**, in his official capacity as Chino Valley Unified School District Superintendent; and **XAVIER BECERRA** in his official capacity as Attorney General of California,

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27      Defendants.

28

Case Number:

**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES**

**DEMAND FOR JURY TRIAL**



1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  KRISTA L. BAUGHMAN (SBN: 264600)
   kbaughman@dhillonlaw.com
3  GREGORY R. MICHAEL (SBN: 306814)
   gmichael@dhillonlaw.com
4  DHILLON LAW GROUP INC.
5  177 Post Street, Suite 700
6  San Francisco, California 94108
   Telephone: (415) 433-1700
7  Facsimile: (415) 520-6593

8  *Counsel for Plaintiffs and the Proposed Class and Subclass*

9
   Mariah Gondeiro, Cal Bar No. 323683
10 FREEDOM FOUNDATION
   50 Woodside Plaza #710
11 Redwood City, WA 98507
12 Telephone: (360) 956-3482
   Email: mgondeiro@freedomfoundation.com
13
14 *Counsel for Plaintiffs and the Proposed Class and Subclass*
   *\* NDCA admission pending*
15
16 Karin Sweigart, Cal Bar No. 247462
   FREEDOM FOUNDATION
17 PO Box 552
   Olympia, WA  98507
18 Telephone: (360) 956-3482
   Email: ksweigart@freedomfoundation.com
19
20 *Counsel for Plaintiffs and the Proposed Class and Subclass*

21
22
23
24
25
26
27
28



Class Action Complaint                                    Case No.:

Plaintiffs Bethany Mendez, Linda Leigh-Dick, Audrey Stewart, Scott Carpenter, and Angela Williams, on behalf of themselves and all others similarly situated, bring this class action lawsuit against the California Teachers Association ("CTA"), the National Education Association ("NEA"), and the respective local affiliates of Plaintiffs (all union defendants collectively, the "Unions"), as well as the superintendents of Plaintiffs' respective public school employers, (collectively, the "Superintendents"), for compensatory, declaratory, and injunctive relief in connection with Defendants' violations of the class members' First Amendment rights of freedom of speech and freedom of association. Specifically, Defendants have violated class members' right not to fund union advocacy by diverting, without class members' clear and affirmative consent – and even over their objections – a portion of class members' lawfully earned wages to the Unions. The Unions then use that money to promote political positions and fund activities which class members no longer wish to support or never supported. This lawsuit seeks injunctive relief ordering Defendants to obtain legally valid consent prior to dues deductions, and to refund any deductions taken in violation of Plaintiffs' rights under the U.S. Constitution and California's unjust enrichment law.

## INTRODUCTION

1.      The Unions, in collusion with local school districts, take a portion of public school employees' wages without legally valid consent from employees, as required under the U.S. Supreme Court's ruling in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018) ("*Janus*") (recognizing constitutional right to *not* fund union political advocacy and invalidating compulsory union dues). Under *Janus*, a public employee must freely provide "clear" and "affirmative" consent for union dues deductions, and a public employer must have "clear and compelling evidence" that the employee waived his or her right to not financially support a union, before any union dues or fees (hereinafter, "dues") may be deducted from the employee's wages. *Janus* invalidated compulsory union dues or fees and expressly protected the right of public employers to *not* fund union political activity.

2.      Plaintiffs, and the class members they represent, are California teachers whose public employers regularly divert a portion of Plaintiffs' wages to financially support the Unions and their political activity.  Plaintiffs never gave legally valid consent for these deductions, and have expressly objected to the deductions and request that they cease, but Defendants continue to deduct dues.

1

Defendants contend that, because Plaintiffs signed a membership form including a continuing, irrevocable deduction agreement, Plaintiffs remain subject to continued dues deductions. Defendants further insist that Plaintiffs may cancel the deductions only during an arbitrary 30-day window.

3.    California Government Code § 3546 requires that public school employees become union members or pay agency fees to their exclusive representative as a condition of continued employment.

4.    California Education Code § 45060 makes school districts beholden to the unions' interpretation of whether a public school employee has clearly and affirmatively consented to union dues deductions as required by *Janus*. The school districts are obligated to remit the dues to the Plaintiffs' local union, regardless of whether a public school employee has clearly and affirmatively consented to dues deductions. The local union then forwards the dues to its state affiliate (in this case, CTA) and national affiliate (in this case, NEA).

5.    Defendants' actions, taken pursuant to California statutes governing the Districts' relationships with the Unions and their collective bargaining agreements, impermissibly infringe on Plaintiffs' and class members' First Amendment rights of freedom of speech and freedom of association.

6.    Plaintiffs have resigned union membership and have revoked any ostensible authorization to continue to deduct dues from their wages, although *Janus* does not so require to effect cessation of union support.

7.    Defendants are state actors acting under the color of state law, specifically California Government Code § 3546 and California Education Code § 45060, and collective bargaining agreements the Districts voluntarily entered into with the Unions.  Plaintiffs bring this civil rights class action pursuant to 42 U.S.C. § 1983 seeking declaratory judgment, preliminary and permanent injunctive relief, and nominal and/or compensatory damages including a refund of union dues illegally taken from class members.

## JURISDICTION AND VENUE

8.    This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C §



1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because one or more Defendants reside in Alameda County, and all Defendants are residents of this State within the meaning of 28 U.S.C. § 1391(c). Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district, including because Defendants do business and operate in Alameda and San Mateo Counties.

10.     The Court has personal jurisdiction over the Defendants because each Defendant is domiciled in the State of California, has sufficient minimum contacts with California, and/or otherwise has intentionally availed himself, herself, or itself of significant benefits provided by the State of California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

11.     This action is properly assigned to either the San Francisco Division or the Oakland Division of the Court, pursuant to Civil L.R. 3-2(c).  A substantial part of the events giving rise to the claims occurred in Alameda County and San Mateo County, California.

## PARTIES

12.     Plaintiff Bethany Mendez resides in Fremont, California.  Mrs. Mendez is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Fremont Unified District Teachers Association ("FUDTA").

13.     Plaintiff Linda Leigh-Dick resides in Vista, California.  Mrs. Leigh-Dick is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Valley Center-Pauma Teachers Association ("VCPTA").

14.     Plaintiff Audrey Stewart resides in Hayward, California.  Mrs. Stewart is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective

3

Class Action Complaint                                                    Case No.:

bargaining is the NEA, CTA and its local affiliate, Hayward Educators Association-CTA-NEA ("HEA").

15.    Plaintiff Scott Carpenter resides in Murrieta, California.  Mr. Carpenter is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Tustin Education Association ("TEA").

16.    Plaintiff Angela Williams resides in Anaheim, California.  Mrs. Williams is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Associated Chino Teachers ("ACT").

17.    Defendant CTA is the state affiliate of the NEA, representing over 325,000 public school teachers in California.  It is headquartered and maintains its principal place of business in Burlingame, San Mateo County, California and engages in business throughout California, including Alameda County.  CTA receives a portion of the dues that are extracted from Plaintiffs and other public school employees.

18.    Defendant NEA is the largest teachers union in the United States and one of the largest public-sector unions.  It is headquartered in Washington, D.C. and engages in business throughout California, including Alameda County.  NEA receives a portion of the dues that are extracted from Plaintiffs and other public school employees.

19.    Defendant FUDTA is an "employee organization," Cal. Gov't Code § 3540.1(d), which is recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Bethany Mendez.  Its state affiliate is the CTA, and its national affiliate is the NEA.  FUDTA is headquartered in Fremont, California and conducts its business and operations in Alameda County.

20.    Defendant VCPTA is an "employee organization," Cal. Gov't Code § 3540.1(d), which is recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Linda Leigh-Dick .  Its state affiliate is the CTA, and its national affiliate is the NEA.  VCPTA is headquartered in Valley Center, California. At this time, Plaintiffs are unaware of VCPTA's legal form. However, because there appears to be no registration with the California Secretary of State corresponding to the VCPTA, on information and belief, the VCPTA is an unincorporated association.

4



1   21.   Defendant HEA is an "employee organization," Cal. Gov't Code § 3540.1(d), which is

2   recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Audrey

3   Stewart.  Its state affiliate is the CTA, and its national affiliate is the NEA.  HEA is headquartered in

4   Hayward, California and conducts its business and operations in Alameda County, California.

5   22.   Defendant TEA is an "employee organization," Cal. Gov't Code § 3540.1(d), which is

6   recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Scott

7   Carpenter.  Its state affiliate is the CTA, and its national affiliate is the NEA.  TEA is headquartered

8   in Tustin, California.

9   23.   Defendant ACT is an "employee organization," Cal. Gov't Code § 3540.1(d), which is

10  recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Angela

11  Williams.  Its state affiliate is the CTA, and its national affiliate is the NEA.  ACT is headquartered

12  in Chino, California.  At this time, Plaintiffs are unaware of ACT's legal form. However, because

13  there appears to be no registration with the California Secretary of State corresponding to the ACT,

14  on information and belief, the ACT is an unincorporated association.

15  24.   Defendant Kim Wallace is sued in her official capacity as the superintendent of the

16  Fremont Unified School District, which is Plaintiff Bethany Mendez's "public school employer,"

17  Cal. Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the FUDTA.  On

18  information and belief, Ms. Wallace resides in or around Fremont, California, in Alameda County.

19  25.   Defendant Ron McCowan is sued in his official capacity as the superintendent of the

20  Valley Center-Pauma Unified School District, which is Plaintiff Linda Leigh-Dick's "public school

21  employer," Cal. Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the

22  VCPTA.  On information and belief, Mr. McCowan resides in or around Valley Center, California.

23  26.   Defendant Matt Wayne is sued in his official capacity as the superintendent of the

24  Hayward Unified School District, which is Plaintiff Audrey Stewart's "public school employer," Cal.

25  Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the HEA.  On

26  information and belief, Mr. Wayne resides in or around Hayward, California, in Alameda County.

27  27.   Defendant Gregory Franklin is sued in his official capacity as the superintendent of

28  Tustin Unified School District, which is Plaintiff Scott Carpenter's "public school employer," Cal.



Class Action Complaint                                                    Case No.:

Gov't Code § 3540.1(k), and is responsible for diverting part of his salary to the TEA.  On information and belief, Dr. Franklin resides in or around Tustin, California.

28.    Defendant Norm Enfield is sued in his official capacity as the superintendent of Chino Valley Unified School District, which is Plaintiff Angela William's "public school employer," Cal. Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the ACT.  On information and belief, Mr. Enfield resides in or around Chino, California.[1]

29.    Attorney General Xavier Becerra is sued in his official capacity as the state official charged with the enforcement of state laws including California Government Code § 3546 and California Education Code § 45060.

### STATEMENT OF FACTS

30.    Bethany Mendez teaches elementary students with high-functioning disabilities in the Fremont Unified School District. Mrs. Mendez is a California public school employee exclusively represented by FUDTA.

31.    In May of 2018, FUDTA mailed Mrs. Mendez a membership form. For several weeks, she kept the form without signing it, doubtful that the union would represent her interests. FUDTA representatives approached her several times at school, pressuring her to sign the form.

32.    Neither the union representatives, nor her public employer, nor the membership form informed Mrs. Mendez: of her right to refrain from financially supporting a union; that she was not required to join the union or pay money to the union as a condition of employment; that the union owed her a duty of fair representation even if she chose not to join or give money to the union; or that if she chose to join the union, the union would use a portion of her dues to fund political lobbying.

33.    Believing she had no other option but to financially support the union, on June 4, 2018, Mrs. Mendez signed the membership enrollment form.

34.    It was not until Mrs. Mendez later learned that she did not have to fund the union, that she decided to opt out.  On October 12, 2018, in a letter to the president of the CTA, she resigned her

---

[1] The Fremont Unified School District, Valley Center-Pauma Unified School District, Hayward Unified School District, Tustin Unified School District, and Chino Valley Unified School District are hereafter collectively referred to as the "Districts."

Class Action Complaint                                         Case No.:

1  union membership and revoked any ostensible authorization to collect union dues from her wages.

2      35.    On October 31, 2018, and again on November 9, 2018, a representative from FUDTA

3  emailed Mrs. Mendez, trying to persuade her not to leave the union. Two FUDTA union

4  representatives also came to her classroom and attempted to persuade her to not resign from the

5  union. Mrs. Mendez told them she did not appreciate being bombarded with pro-union propaganda

6  while at work.

7      36.    On February 8, 2018, Mrs. Mendez sent a follow-up email to the president of FUDTA,

8  reiterating her prior revocation of her membership and again demanding the cessation of the

9  deduction of dues from her paycheck.

10      37.    On February 8, 2018, the CTA confirmed via email that it would not stop the deduction

11  of dues from her wages, and cited to the membership form she signed which requires she submit

12  another written resignation "not less than thirty (30) days and not more than sixty (60) days before

13  the annual anniversary date" of her signed membership form.

14      38.    Despite Mrs. Mendez's demands that the dues deductions cease, the Fremont Unified

15  School District has continued to deduct dues from Mrs. Mendez's paycheck.

16      39.    Despite Mrs. Mendez's demands that the dues deductions cease, FUDTA has continued

17  to accept Mrs. Mendez's dues from the District.

18      40.    Plaintiff Linda Leigh-Dick is a guidance counselor at Valley Center High School. Mrs.

19  Leigh-Dick is a California public school employee exclusively represented by VCPTA.

20      41.    Neither the union representatives, nor her public employer, nor the membership form

21  provided by the VCPTA informed Mrs. Leigh-Dick: of her right to refrain from financially

22  supporting a union; that she was not required to join the union or pay money to the union as a

23  condition of employment; that the union owed her a duty of fair representation even if she chose not

24  to join or give money to the union; or that if she chose to join the union, the union would use a

25  portion of her dues to fund political lobbying.

26      42.    Believing she had no other option but to financially support the union, Mrs. Leigh-Dick

27  signed a membership enrollment form with her local union, VCPTA, in May of 2018.

28      43.    Mrs. Leigh-Dick decided to opt out in November of 2018 because she did not agree



7

with some of the Unions' political objectives. She resigned her union membership and revoked any ostensible authorization to collect union dues from her wages, in a letter sent to the president of the CTA on December 13, 2018.

44.    On December 17, 2018, the CTA responded to Mrs. Leigh-Dick by letter, stating that any request to change her membership status must be made in writing and hand-delivered or mailed to her local chapter, VCPTA. In an effort to pressure Mrs. Leigh-Dick into maintaining her membership, the CTA highlighted the benefits that only accompany active membership.

45.    Shortly after Mrs. Leigh-Dick sent her request to the CTA, the president of her local chapter, Amanda Walford, told Mrs. Leigh-Dick in person she could not opt out because she was bound to the membership form until an escape period in May 2019.

46.    Nevertheless, Mrs. Leigh-Dick was not convinced active membership in the CTA was worthwhile. She then sent an additional letter to the VCPTA president on December 20, 2018.

47.    Mrs. Leigh-Dick has not received a response from the CTA or the VCPTA following her second letter to Mrs. Walford.

48.    Despite Mrs. Leigh-Dick's demands that the dues deductions cease, the Valley Center-Pauma Unified School District has continued to deduct dues from Mrs. Leigh-Dick's paycheck.

49.    Despite Mrs. Leigh-Dick's demands that the dues deductions cease, VCPTA has continued to accept Mrs. Leigh-Dick's dues from the District.

50.    Plaintiff Audrey Stewart teaches in the Hayward Unified School District. Mrs. Stewart is a California public school employee exclusively represented by HEA.

51.    Neither the union representatives, nor her public employer, nor the membership form provided by the HEA informed Mrs. Stewart: of her right to refrain from financially supporting a union; that she was not required to join the union or pay money to the union as a condition of employment; that the union owed her a duty of fair representation even if she chose not to join or give money to the union; or that if she chose to join the union, the union would use a portion of her dues to fund political lobbying.

52.    Believing she had no other option but to financially support the union, Mrs. Stewart signed a membership enrollment form with her local union, HEA, in May of 2018.



---

8

Class Action Complaint                                                                    Case No.:

53.    Mrs. Stewart decided to opt out of union membership in December 2018 because she did not believe the union represented her interests. She resigned her union membership and revoked any ostensible authorization to collect union dues from her wages, in a letter to the president of the CTA on December 18, 2018.

54.    On January 7, 2019, the CTA responded by letter to Mrs. Stewart stating that any request to change her membership status must be made in writing and hand-delivered or mailed to her local chapter, HEA. In an effort to pressure Mrs. Stewart into maintaining her membership, the CTA highlighted the benefits that only accompany active membership.

55.    Mrs. Stewart sent an additional resignation letter to the HEA.  The president of the HEA and several other union representatives reached out to Mrs. Stewart multiple times in an effort to persuade her not to resign her membership.

56.    The CTA has communicated to Mrs. Stewart, both in person and through text, that it will not stop the deduction of dues from her wages, and has cited to the membership form she signed, which requires she submit another written resignation "not less than thirty (30) days and not more than sixty (60) days before the annual anniversary date" of her signed membership form.

57.    Despite Mrs. Stewart's demands that the dues deductions cease, the Hayward Unified School District has continued to deduct dues from Mrs. Stewart's paycheck.

58.    Despite Mrs. Stewart's demands that the dues deductions cease, HEA has continued to accept Mrs. Stewart's dues from the District.

59.    Plaintiff Scott Carpenter teaches in the Tustin Unified School District.  Mr. Carpenter is a California public school teacher exclusively represented by TEA.

60.    Neither the union representatives, nor his public employer, nor the membership form provided by the TEA informed Mr. Carptenter: of his right to refrain from financially supporting a union; that he was not required to join the union or pay money to the union as a condition of employment; that the union owed him a duty of fair representation even if he chose not to join or give money to the union; or that if he chose to join the union, the union would use a portion of his dues to fund political lobbying.

61.    Believing he had no other option but to financially support the union, Mr. Carpenter



Class Action Complaint                                              Case No.:

1   signed a membership enrollment form with his local union, TEA, on September 26, 2018.

2       62.   Mr. Carpenter resigned his union membership and revoked any ostensible

3   authorization to collect union dues from his wages in a letter sent to the president of the CTA on

4   November 1, 2018.  Mr. Carpenter also sent a copy of his letter to the TEA.

5       63.   On November 5, the president of TEA, Roger Kravigan, emailed Mr. Carpenter asking

6   to speak with him about his choice to opt out of the union.  On November 7, 2018, Mr. Carpenter

7   responded to Mr. Kravigan's email and repeated both his desire to withdraw membership, and his

8   revocation of any ostensible authorization to collect dues for both the CTA and TEA.

9       64.   In an effort to persuade Mr. Carpenter not to resign, Mr. Kravigan and the CTA sent a

10   letter to Mr. Carpenter on November 8, 2018, asking him to reconsider his decision, while

11   highlighting the benefits of active membership. Mr. Carpenter did not wish to reconsider.

12   Additionally, Mr. Kravigan stated the TEA would not recognize Mr. Carpenter's revocation of the

13   authority to collect dues until one year after Mr. Carpenter signed his membership form.

14       65.   Despite Mr. Carpenter's demands that the dues deductions cease, the Tustin Unified

15   School District has continued to deduct dues from Mr. Carpenter's paycheck.

16       66.   Despite Mr. Carpenter's demands that the dues deductions cease, TEA has continued to

17   accept Mr. Carpenter's dues from the District.

18       67.   Plaintiff Angela Williams teaches science at the China Valley Unified School District.

19   Mrs. Williams is a public school teacher exclusively represented by ACT.

20       68.   Neither the union representatives, nor her public employer, nor the membership form

21   provided by ACT informed Mrs. Williams: of her right to refrain from financially supporting a union;

22   that she was not required to join the union or pay money to the union as a condition of employment;

23   that the union owed her a duty of fair representation even if she chose not to join or give money to

24   the union; or that if she chose to join the union, the union would use a portion of her dues to fund

25   political lobbying.

26       69.   Believing she had no other option but to financially support the union, Mrs. Williams

27   signed a membership enrollment form with her local union, ACT, on June 19, 2018.

28       70.   Mrs. Williams resigned her union membership and revoked any ostensible

Class Action Complaint            Case No.:

**DH | LG**
**DHILLON LAW GROUP INC.**

authorization to collect union dues from her wages in a letter sent to the president of the CTA on July 29, 2018.

71.    The CTA responded by letter to Mrs. Williams stating that any request to change her membership status must be made in writing and hand-delivered or mailed to her local chapter, ACT.

72.    Mrs. Williams sent an additional resignation letter to the ACT in August of 2018.  The president of the ACT, Brenda Walker, reached out to Mrs. Williams in September 2018 in an effort to persuade her not to resign her membership.  The president also informed her over the phone that she could not revoke the dues deductions until the anniversary date on her commitment card.

73.    Despite Mrs. Williams' demands that the dues deductions cease, the Chino Valley Unified School District has continued to deduct dues from Mrs. Williams' paycheck.

74.    Despite Mrs. Williams' demands that the dues deductions cease, ACT has continued to accept Mrs. Williams' dues from the District.

75.    On June 27, 2018, the U.S. Supreme Court in *Janus v. AFSCME, Council 31*, held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." 138 S. Ct. at 2486.  The Supreme Court also held that, to be valid, an affirmative agreement to make payments to a union must constitute a waiver of this constitutional right that is "freely given and shown by clear and convincing evidence." *Id*.

76.    Plaintiffs did not provide legally valid affirmative consent for union dues deductions, nor did they knowingly waive their constitutional right not to financially support the Unions.  Accordingly, all union dues deductions from Plaintiffs' wages have been unlawful.

77.    Plaintiffs have communicated in writing to the CTA and its local affiliates that they object to union membership and the payment of any union dues.

78.    Despite the Supreme Court's ruling in *Janus* and Plaintiffs' subsequent objections, the Districts continue to divert a portion of Plaintiffs' wages to the Unions.

79.     Despite the Supreme Court's ruling in *Janus* and Plaintiffs' subsequent objections, the Unions continue to accept these dues.

80.    The Union Defendants have told Plaintiffs that the continued dues deductions are

Class Action Complaint                                                                Case No.:

lawful because membership forms signed by Plaintiffs purport to irrevocably authorize union dues deductions from Plaintiffs' wages.  The CTA's standard agreement, widely used throughout the state, reads as follows:

> I hereby (1) agree to pay annual dues uniformly required for membership in the Local, CTA, and NEA; and (2) request and authorize my Employer to deduct from my pay in each pay period, and transmit to CTA or its designated agent, a pro rata portion of the annual dues required for membership in the Local, CTA, and NEA, governing bodies and authorize dues payment on a continuing basis, and regardless of my membership status, unless my obligation to do so ends under one of the circumstances below. This agreement to pay dues continues from year to year, regardless of my membership status, unless: I revoke it by sending written notice via U.S. mail to CTA Member Services, P.O. Box 4178, Burlingame, CA 94011, not less than thirty (30) days and not more than sixty (60) days before the annual anniversary date of this agreement; my employment with the Employer ends; or as otherwise required by law.

81.    These membership agreement forms, including the dues deduction clauses, purport to authorize the Districts to deduct union dues from Plaintiffs' wages and remit them to the Unions. The membership forms state that authorization for the deductions will automatically renew annually unless the employee revokes the authorization between 30 and 60 days prior to the anniversary of the day Plaintiffs signed the authorization.

82.    CTA requires Plaintiffs to continue paying union dues unless and until Plaintiffs avail themselves of a narrow 30-day window in which CTA will honor Plaintiffs' demands that dues deductions cease.  For the remainder of the year, CTA refuses to acknowledge any attempt by Plaintiffs to end the deduction of union dues from their wages.

83.    The membership forms do not contain sufficient notice indicating that a fundamental First Amendment right was being, or potentially being, waived. For instance, the forms do not inform the employee that he or she is not required to join the union or pay money to the union as a condition of employment, or that the union owes him or her a duty of fair representation even if he or she chooses not to join or give money to the union, or that if he or she chooses to join the union, the union will use a portion of the member dues to fund political lobbying.

84. By signing the membership forms, Plaintiffs did not provide legally valid consent to the payroll deduction of union dues, and they did not waive their constitutional right to not financially support a union.

85. Absent injunctive relief, the Districts will continue deducting union dues from Plaintiffs' wages pursuant to California Government Code § 3546 and California Education Code § 45060 over Plaintiffs' objections and in violation of their rights.

86. Absent injunctive relief, the Unions will continue to accept Plaintiffs' money over Plaintiffs' objections and in violation of their rights.

87. CTA drafted the dues deduction provisions and inserted them into the fine-print of its union membership form. CTA presented these membership forms as take-it-or-leave-it form contracts – Plaintiffs could not bargain over the terms of the due's deduction authorizations, and Plaintiffs were not advised to seek counsel and did not seek counsel. Plaintiffs were not made aware, either by the language of the agreements, by the Unions, or by their public employers, of their constitutional right to not fund union advocacy or the potential significance of the agreement as a waiver of this fundamental right.

88. California Government Code § 3546 and California Education Code § 45060, as well as Plaintiffs' respective collective bargaining agreements, authorize and compel the Districts to deduct union dues from Plaintiffs' wages and forward them to the Unions, despite the fact that Plaintiffs have not clearly and affirmatively consented to the deductions by waiving the constitutional right to not fund union advocacy. The statutes and collective bargaining provisions, and Defendants' actions pursuant to them, impermissibly infringe Plaintiffs' First Amendment rights of free speech and free association as secured against state infringement by the Fourteenth Amendment to the U.S. Constitution.

## CLASS ALLEGATIONS

89. Plaintiffs Bethany Mendez, Linda Leigh-Dick, Audrey Stewart, Scott Carpenter, and Angela Williams (collectively, the "Class Representatives") bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B), 23(b)(2), and, alternatively, 23(b)(3), for themselves and for all others similarly situated, and any subclasses deemed appropriate

by this Court. The Class and Subclass that the Class Representatives seek to represent are defined as follows:

**Class:** All individuals: 1) who are public school employees as defined in Cal. Gov't Code § 3540.1(j), and exclusively represented by CTA and its affilliates; 2) who signed a membership form, before or since *Janus,* that did not contain sufficient notice to obtain clear and affirmative consent for dues deductions and a knowing waiver of the constitutional right not to fund union advocacy; and 3) from whose salaries the public employers continue to deduct union dues on behalf of CTA and its affiliates. The class includes everyone who comes within the class definition at any time from two years prior to the commencement of this action until the conclusion of this action.

**Subclass:** All individuals: 1) who are public school employees as defined in Cal. Gov't Code § 3540.1(j), and exclusively represented by CTA and its affilliates; 2) who signed a membership form, before or since *Janus,* that did not contain sufficient notice to obtain clear and affirmative consent for dues deductions and a knowing waiver of the constitutional right not to fund union advocacy; 3) who have objected to or will object to, the payment of any union dues or fees, including by virtue of resigning union membership; and 4) from whose salaries the public employers continue to deduct union dues on behalf of CTA and its affiliates. The class includes everyone who comes within the class definition at any time from two years prior to the commencement of this action until the conclusion of this action.

90.    Upon information and belief, there are hundreds, and likely tens of thousands, of Class and Subclass members in varying locations across California. Indeed, according to the California Department of Education, from 2016 to 2017 there were 313,989 teachers in California public schools, each of whom would have been required to pay union dues as a condition of employment. The Class is so large and geographically diverse that joinder is impractical.

91.    There are questions of law and fact common to all class members, and these common questions of law or fact predominate over any questions affecting only individual members of the Class or Subclass.  Common questions include, but are not limited to: whether Defendants violate Class members' First Amendment rights by continuing to deduct union dues despite Defendants' failure to obtain clear and affirmative consent for dues deductions; whether Defendants violate Subclass members' First Amendment rights by continuing to deduct union dues despite Defendants' failure to obtain clear and affirmative consent for dues deductions, and despite Subclass members' express objection to dues deductions and union membership.



Class Action Complaint                                                Case No.:

92.     The Class Representatives' claims are typical of the claims of the Class and Subclass they seek to represent in that the Class Representatives, and all members of the proposed class, suffer the seizure of union dues by the Districts and in accordance with state law despite Defendants' failure to obtain clear and affirmative consent for dues deductions, and also despite the Class Representatives' and Subclass members' subsequent express objection to dues deductions and union membership.  The Defendants have an identical duty to Class Representatives and all other Class members and Subclass members regarding these claims.

93.     The Class Representatives can and will fairly and adequately represent the interests of the Class and Subclass.

94.     The Districts' and Superintendents' duty to cease the aforementioned union dues deductions, and the Union's duty to pay back all monies deducted without Plaintiffs' legally valid consent – and, in the case of the Subclass, over Plaintiffs' express objection – applies equally to all Class members and Subclass members. The prosecution of separate actions by individual Class members or Subclass members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

95.     Defendants have acted to deprive Class Representatives, and all Class members and Subclass members, of their constitutional rights on grounds generally applicable to all, thereby making appropriate declaratory, injunctive, and other equitable relief with regard to the Class and Subclass as a whole.

96.     The Class Representatives, Class, and Subclass are represented by the undersigned counsel, of which: Freedom Foundation is a long-established charitable organization experienced in furnishing representation to unionized public and partial-public employees whose constitutional rights have been violated; and Dhillon Law Group Inc. is experienced in class action and complex litigation, as well as procedural and legal issues specific to California jurisdictions.

97.     A class action may be maintained under Rule 23(b)(1)(A) because separate actions by Class members or Subclass members could risk inconsistent adjudications on the underlying legal issues.

98.     A class action may be maintained under Rule 23(b)(1)(B) because an adjudication



15

1   determining the constitutionality of union dues deductions in the aforementioned circumstances, as a

2   practical matter, will be dispositive of the interests of all Class members and Subclass members.

3       99.     A class action may be maintained under Rule 23(b)(2) because Defendants acted or

4   refused to act on grounds that apply generally to the Class and Subclass, making injuncting relief and

5   corresponding declaratory relief appropriate respecting the Class and Subclass as a whole.

6       100.    A class action may be maintained under Rule 23(b)(3) because questions of law or fact

7   common to the members of the class predominate over any questions affecting only individual

8   members in that the important and controlling questions of law and fact are common to all members

9   of the Class and Subclass, *i.e.*, whether the aforementioned dues deductions violate the First

10   Amendment rights of Class members and/or Subclass members. A class action is superior to other

11   available methods for the fair and efficient adjudication of the controversy in as much as the

12   individual Class members and Subclass members are deprived of the same rights by Defendants'

13   actions, differing only in the amount of money deducted – which is, for legal purposes, immaterial.

14   The amount of money deducted is known to Defendants and easily calculated from Defendants'

15   business records.  The limited amount of money involved in the case of each individual's claim

16   (union dues deductions without valid consent; union dues deductions since each Subclass member

17   objected to union membership and the payment of union dues) would make it burdensome for the

18   class members to maintain separate actions.

19       101.    The illegal actions taken by Defendants were taken pursuant to the same statutes and

20   collective bargaining agreements, and constitute a concerted scheme resulting in the violation of the

21   rights of Plaintiffs, Class members, and Subclass members. Additionally, the affiliation among the

22   Defendants presents an organizational structure which makes it expedient for the named Plaintiffs

23   and members of the Class and Subclass to proceed against all named defendants.

24

25

26

27

28   //



16

Class Action Complaint                                        Case No.:

**FIRST CLAIM FOR RELIEF**
**Violation of the First Amendment (42 U.S.C. § 1983)**
**(By Plaintiffs, Class, and Subclass Against**
**Attorney General Xavier Becerra and the Superintendents)**

*The statute authorizing union dues deductions from Plaintiffs' wages*
*violates the First Amendment to the United States Constitution.*

102.    Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

103.    California Government Code § 3546 and California Education Code § 45060, on their face and as applied, violate Plaintiffs' First Amendment rights, as applied to the states by the Fourteenth Amendment, because the statutes authorize and compel the Districts and Superintendents to deduct union dues from Plaintiffs' wages, even though Plaintiffs have not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy.

104.    Consent to fund union advocacy cannot be presumed, and Plaintiffs did not waive their constitutional right to refuse to fund union advocacy.

105.    In addition, Subclass members also expressly objected to the payment of union dues and to union membership.

106.    No compelling state interest justifies this infringement of Plaintiffs' First Amendment rights.

107.    Plaintiffs, Class members, and Subclass members have been injured as a result of Defendants' application of these statutes, and seek preliminary and permanent injunctive relief and declaratory relief against the Superintendents and Attorney General Xavier Becerra, attorneys' fees pursuant to 42 U.S.C. § 1988, and costs.

**SECOND CLAIM FOR RELIEF**
**Violation of the First Amendment (42 U.S.C. § 1983)**
**(By Plaintiffs, Class, and Subclass Against the Unions)**

*The deduction of union dues from Plaintiffs' wages*
*violates the First Amendment to the United States Constitution.*

108.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.



17

109.    The collective bargaining agreements entered into with the Districts and Plaintiffs' local exclusive representatives, which restrict Plaintiffs' rights to revoke the authorization to collect union dues, on their face and as applied, violate Plaintiffs' First Amendment rights as applied to the states by the Fourteenth Amendment.

110.    Plantiffs have a constitutional right to not associate with an exclusive representative and to not support, financially or otherwise, petitioning and speech.  The collective bargaining agreements the Unions have negotiated with the Districts divert a portion of Plaintiffs' wages to the Unions even though class members have not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy.

111.    Consent to fund union advocacy cannot be presumed, nor may a waiver of the constitutional right to not fund union advocacy be presumed.

112.    No compelling state interest justifies this infringement on Plaintiffs' First Amendment rights.

113.    Plaintiffs, Class members, and Subclass members have been injured as a result of Defendants' conduct, and seek preliminary and permanent injunctive relief, declaratory relief, damages, attorneys' fees pursuant to 42 U.S.C. § 1988, and costs.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(By Plaintiffs, Class, and Subclass against the Unions)**
***Defendants' scheme unjustly enriched the Unions.***

114.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

115.    Plaintiffs, Class members, and Subclass members seek reimbursement of union fees taken by Defendants without clear and affirmative consent.

116.    The Unions received a benefit in the form of a percentage of the wages of Plaintiffs, Class members, and Subclass members, pursuant to the dues deduction scheme imposed by Defendants.

117.    The Unions benefited at the expense of Plaintiffs, Class members, and Subclass members, because school districts across the state have deducted money from their wages and

Class Action Complaint                                                    Case No.:

remitted it to the the Unions.

118.    The circumstances of Defendants' scheme make it unjust for the Unions to retain the benefit, and the Unions should be ordered to disgorge any monies unjustly received.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray, on behalf of themselves and all those similarly situtated, for the following:

i.    **Declaratory Judgment**: for entry of a Declaratory Judgment that California Government Code § 3546 and California Education Code §45060, and the Union's membership enrollment practices authorized thereby, on their face and as applied, violate the First Amendment to the United States Constitution, as secured against state infringement by the Fourteenth Amendment to the United States Constitution, because they permit and compel public employers to deduct union dues from the wages of Plaintiffs, Class members, and Subclass members, despite the absence of clear and affirmative consent to the deductions by waiving the constitutional right to not fund union advocacy, and/or because these laws additionally force Plaintiffs and Subclass members to maintain union membership and subject themselves to dues deductions over their objection;

ii.    **Declaratory Judgment:** for entry of a Declaratory Judgment that the Superintendents' deduction of monies from the wages of Plaintiffs, Class members, and Subclass members, without clear and affirmative consent to the deductions by waiving the constitutional right to not fund union advocacy, is illegal and unconstitutional;

iii.    **Injunctive Relief:** for issuance of temporary, preliminary, and permanent injunctive relief, enjoining Defendants from engaging in any activity this Court declares illegal or likely illegal, including but not limited to: 1) the deduction of union dues from the wages of Plaintiffs, Class members, and Subclass members without first obtaining legally valid consent to such deductions, including, *inter alia,* notice to the employee that he or she is not required to join the union or pay money to the union as a condition of employment; notice that the union owes him or her a duty of fair representation even if he or she chooses not to join or give money to the union; notice that if he or she chooses to join the union, the union will use a portion of the

19

member dues to fund political lobbying; and 2) the continued enforcement of California Government Code § 3546 and California Education Code § 45060 and the Union's membership enrollment practices pursuant thereto.

iv. **Compensatory Damages for the Class:** for entry of a judgment requiring Defendant Unions to refund any union dues taken without valid consent from Plaintiffs' and Class members' wages going back to the extent permitted by the relevant statute of limitations or the date each plaintiff or class member began employment, whichever is more recent, as well as nominal damages, and restitution;

v. **Compensatory Damages for the Subclass:** for entry of a judgment requiring Defendant Unions to refund any union dues taken from Plaintiffs' and Subclass members' wages since they objected to the payment of any union dues or fees, including by virtue of resigning union membership, as well as nominal damages, and restitution;

vi. **Costs and attorneys' fees:** for an award to Plaintiffs, Class members, and Subclass members of their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988; and

vii. **Other relief:** for such other and additional relief as the Court may deem just and proper.


Dated: March 11, 2019


By: _/s/ Harmeet K. Dhillon_____

DHILLON LAW GROUP INC.
Harmeet K. Dhillon
Krista L. Baughman
Gregory R. Michael
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, California 94108
p. 415.433.1700

*Attorneys for Plaintiffs and the Proposed Class and Subclass*



Class Action Complaint                                                                 Case No.:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEDOM FOUNDATION
Mariah Gondeiro, Cal Bar No. 323683
Freedom Foundation
50 Woodside Plaza #710
Redwood City, WA 98507
Telephone: (360) 956-3482
Email: mgondeiro@freedomfoundation.com

Karin Sweigart, Cal Bar No. 247462
Freedom Foundation
PO Box 552
Olympia, WA  98507
Telephone: (360) 956-3482
Email: ksweigart@freedomfoundation.com

*Attorney for Plaintiffs and the Proposed Class
and Subclass*



Class Action Complaint                                    Case No.: