1  [*Counsel listed on next page*]

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BETHANY MENDEZ**, an individual; **LINDA LEIGH DICK**, an individual; **AUDREY STEWART**, an individual; **SCOTT CARPENTER**, an individual; **ANGELA WILLIAMS**, an individual; **STEPHANIE CHRISTIE**, an individual; and **JENNIFER GRIBBEN**, an individual, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>**CALIFORNIA TEACHERS ASSOCIATION**, a California corporation; **NATIONAL EDUCATION ASSOCIATION**, a nonprofit corporation; **FREMONT UNIFIED DISTRICT TEACHERS ASSOCIATION, INC.**, a nonprofit corporation; **VALLEY CENTER-PAUMA TEACHERS ASSOCIATION**; **HAYWARD EDUCATION ASSOCIATION-CTA-NEA**, a California corporation; **TUSTIN EDUCATORS ASSOCIATION**, a nonprofit corporation; **ASSOCIATED CHINO TEACHERS**; **KIM WALLACE**, in her official capacity as Fremont Unified School District Superintendent; **RON MCCOWAN**, in his official capacity as Valley Center-Pauma Unified School District; **MATT WAYNE**, in his official capacity as Hayward Unified School District Superintendent; **GREGORY FRANKLIN**, in his official capacity as Tustin Unified School District Superintendent; **NORM ENFIELD**, in his official capacity as Chino Valley Unified School District Superintendent; and **XAVIER BECERRA** in his official capacity as Attorney General of California,<br><br>          Defendants. | Case Number: 4:19-cv-01290-YGR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

First Amended Complaint                              No: 4:19-cv-01290-YGR

1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  KRISTA L. BAUGHMAN (SBN: 264600)
   kbaughman@dhillonlaw.com
3  GREGORY R. MICHAEL (SBN: 306814)
   gmichael@dhillonlaw.com
4  DHILLON LAW GROUP INC.
5  177 Post Street, Suite 700
   San Francisco, California 94108
6  Telephone: (415) 433-1700
7  Facsimile: (415) 520-6593

8  *Counsel for Plaintiffs and the Proposed Class and Subclass*

9

10 Mariah Gondeiro, Cal Bar No. 323683
   Email: mgondeiro@freedomfoundation.com
11 Karin Sweigart, Cal Bar No. 247462
   Email: ksweigart@freedomfoundation.com
12 FREEDOM FOUNDATION
13 PO Box 552
   Olympia, WA  98507
14 Telephone: (360) 956-3482

15 *Counsel for Plaintiffs and the Proposed Class and Subclass*

16

17

18

19

20

21

22

23

24

25

26

27

28



2

First Amended Complaint                                      No: 3:19-cv-01290-YGR

Plaintiffs Bethany Mendez, Linda Leigh Dick, Audrey Stewart, Scott Carpenter, Angela Williams, Stephanie Christie, and Jennifer Gribben, on behalf of themselves and all others similarly situated, bring this class action lawsuit against the California Teachers Association ("CTA"), the National Education Association ("NEA"), and the respective local affiliates of Plaintiffs (all union defendants collectively, the "Unions"), as well as the superintendents of Plaintiffs' respective public school employers, (collectively, the "Superintendents"), for compensatory, declaratory, and injunctive relief in connection with Defendants' violations of the Class members' First Amendment rights of freedom of speech and freedom of association. Specifically, Defendants have violated Class members' right not to fund union advocacy by diverting, without Class members' clear and affirmative consent – and even over their objections – a portion of Class members' lawfully earned wages to the Unions. The Unions then use that money to promote political positions and fund activities which Class members no longer wish to support or never supported. This lawsuit seeks injunctive relief ordering Defendants to obtain legally valid consent prior to dues deductions, and to refund any deductions taken in violation of Plaintiffs' rights under the U.S. Constitution.

### INTRODUCTION

1.      The Unions, in collusion with local school districts, take a portion of public school employees' wages without legally valid consent from employees, as required under the U.S. Supreme Court's ruling in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018) ("*Janus*") (recognizing constitutional right to *not* fund union political advocacy and invalidating compulsory union dues). Under *Janus*, a public employee must freely provide "clear" and "affirmative" consent for union dues deductions, and a public employer must have "clear and compelling evidence" the employee waived his or her right to not financially support a union, before any union dues or fees (hereinafter, "dues") may be deducted from the employee's wages. *Janus* invalidated compulsory union dues or fees and expressly protected the right of public employers to *not* fund union political activity.

2.      Plaintiffs, and the Class members they represent, are California teachers whose public employers regularly divert a portion of Plaintiffs' wages to financially support the Unions and their political activity.  Plaintiffs never gave legally valid consent for these deductions, and expressly objected to the deductions and requested that they cease.  Up until the time this litigation



First Amended Complaint                                                                                    No: 4:19-cv-01290-YGR

1   commenced, Defendants continued to deduct dues.  Defendants contended that, because Plaintiffs

2   signed a dues deduction form including a continuing, irrevocable deduction provision, Plaintiffs

3   remained subject to continued dues deductions. Defendants further insisted that Plaintiffs may cancel

4   the deductions only during an arbitrary 30-day window.

5   3.   California Education Code § 45060 makes school districts beholden to the unions'

6   interpretation of whether a public school employee has clearly and affirmatively consented to union

7   dues deductions as required by *Janus*. The school districts are obligated to remit the dues to the

8   Plaintiffs' local union, regardless of whether a public school employee has clearly and affirmatively

9   consented to dues deductions. The local union then forwards the dues to its state affiliate (in this

10   case, CTA) and national affiliate (in this case, NEA).

11   4.   Defendants' actions, taken pursuant to California statutes governing the Districts'

12   relationships with the Unions and their collective bargaining agreements ("CBAs"), impermissibly

13   infringe on Plaintiffs' and Class members' First Amendment rights of freedom of speech and

14   freedom of association.

15   5.   Plaintiffs resigned union membership and revoked any ostensible authorization to

16   continue to deduct dues from their wages, although *Janus* does not so require to effect cessation of

17   union support.

18   6.   Defendants are state actors acting under the color of state law, specifically California

19   Education Code § 45060, and pursuant to CBAs that the Districts voluntarily entered into with the

20   Unions.  Plaintiffs bring this civil rights class action pursuant to 42 U.S.C. § 1983 seeking

21   declaratory judgment, preliminary and permanent injunctive relief, and nominal and/or compensatory

22   damages including a refund of union dues illegally taken from Class members.

23   **JURISDICTION AND VENUE**

24   7.   This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331

25   because it arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C §

26   1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and

27   other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal

28   Rules of Civil Procedure.

8.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because one or more Defendants reside in Alameda County, and all Defendants are residents of this State within the meaning of 28 U.S.C. § 1391(c). Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district, including because Defendants do business and operate in Alameda and San Mateo Counties.

9.      The Court has personal jurisdiction over the Defendants because each Defendant is domiciled in the State of California, has sufficient minimum contacts with California, and/or otherwise has intentionally availed himself, herself, or itself of significant benefits provided by the State of California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

10.     This action is properly assigned to either the Oakland Division of the Court, pursuant to Civil L.R. 3-2(c). A substantial part of the events giving rise to the claims occurred in Alameda County and San Mateo County, California.

## PARTIES

11.     Plaintiff Bethany Mendez resides in Fremont, California. Mendez is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Fremont Unified District Teachers Association ("FUDTA").

12.     Plaintiff Linda Leigh Dick resides in Vista, California. Leigh Dick is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Valley Center-Pauma Teachers Association ("VCPTA").

13.     Plaintiff Audrey Stewart resides in Hayward, California. Stewart is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Hayward Educators Association-CTA-NEA ("HEA").

14.     Plaintiff Scott Carpenter resides in Murrieta, California. Carpenter is a public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is the NEA, CTA and its local affiliate, Tustin Education Association ("TEA").

15.     Plaintiff Angela Williams resides in Anaheim, California. Williams is a public school



1   employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is

2   the NEA, CTA and its local affiliate, Associated Chino Teachers ("ACT").

3       16.    Plaintiff Stephanie (Randazzo) Christie resides in Livermore, California.  Christie is a

4   public school employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective

5   bargaining is the NEA, CTA and its local affiliate, FUDTA.

6       17.    Plaintiff Jennifer Gribben resides in Livermore, California.  Gribben is a public school

7   employee, Cal. Gov't Code § 3540.1(j), whose exclusive representative for collective bargaining is

8   the NEA, CTA and its local affiliate, FUDTA.

9       18.    Defendant CTA is the state affiliate of the NEA, representing over 325,000 public

10   school teachers in California.  It is headquartered and maintains its principal place of business in

11   Burlingame, San Mateo County, California and engages in business throughout California, including

12   Alameda County.  CTA receives a portion of the dues that are extracted from Plaintiffs and other

13   public school employees.

14       19.    Defendant NEA is the largest teachers union in the United States and one of the largest

15   public-sector unions.  It is headquartered in Washington, D.C. and engages in business throughout

16   California, including Alameda County.  NEA receives a portion of the dues that are extracted from

17   Plaintiffs and other public school employees.

18       20.    Defendant FUDTA is an "employee organization," Cal. Gov't Code § 3540.1(d), which

19   is recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiffs Bethany

20   Mendez, Stephanie Christie, and Jennifer Gribben.  Its state affiliate is the CTA, and its national

21   affiliate is the NEA.  FUDTA is headquartered in Fremont, California and conducts its business and

22   operations in Alameda County.

23       21.    Defendant VCPTA is an "employee organization," Cal. Gov't Code § 3540.1(d), which

24   is recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Linda Leigh

25   Dick .  Its state affiliate is the CTA, and its national affiliate is the NEA.  VCPTA is headquartered in

26   Valley Center, California. At this time, Plaintiffs are unaware of VCPTA's legal form. However,

27   because there appears to be no registration with the California Secretary of State corresponding to the

28   VCPTA, on information and belief, the VCPTA is an unincorporated association.

First Amended Complaint                                                        No: 4:19-cv-01290-YGR

DILLON LAW GROUP INC.

1

22.     Defendant HEA is an "employee organization," Cal. Gov't Code § 3540.1(d), which is

2

recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Audrey

3

Stewart.  Its state affiliate is the CTA, and its national affiliate is the NEA.  HEA is headquartered in

4

Hayward, California and conducts its business and operations in Alameda County, California.

5

23.     Defendant TEA is an "employee organization," Cal. Gov't Code § 3540.1(d), which is

6

recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Scott

7

Carpenter.  Its state affiliate is the CTA, and its national affiliate is the NEA.  TEA is headquartered

8

in Tustin, California.

9

24.     Defendant ACT is an "employee organization," Cal. Gov't Code § 3540.1(d), which is

10

recognized as the "exclusive representative," Cal. Gov't Code § 3540.1(e), of Plaintiff Angela

11

Williams.  Its state affiliate is the CTA, and its national affiliate is the NEA.  ACT is headquartered

12

in Chino, California.  At this time, Plaintiffs are unaware of ACT's legal form. However, because

13

there appears to be no registration with the California Secretary of State corresponding to the ACT,

14

on information and belief, the ACT is an unincorporated association.

15

25.     Defendant Kim Wallace is sued in her official capacity as the superintendent of the

16

Fremont Unified School District, which is the "public school employer," Cal. Gov't Code §

17

3540.1(k), of Plaintiffs Bethany Mendez, Stephanie Christie, and Jennifer Gribben and is responsible

18

for diverting part of their salaries to the FUDTA.  On information and belief, Wallace resides in or

19

around Fremont, California, in Alameda County.

20

26.     Defendant Ron McCowan is sued in his official capacity as the superintendent of the

21

Valley Center-Pauma Unified School District, which is Plaintiff Linda Leigh Dick's "public school

22

employer," Cal. Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the

23

VCPTA.  On information and belief, McCowan resides in or around Valley Center, California.

24

27.     Defendant Matt Wayne is sued in his official capacity as the superintendent of the

25

Hayward Unified School District, which is Plaintiff Audrey Stewart's "public school employer," Cal.

26

Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the HEA.  On

27

information and belief, Wayne resides in or around Hayward, California, in Alameda County.

28

28.     Defendant Gregory Franklin is sued in his official capacity as the superintendent of



Tustin Unified School District, which is Plaintiff Scott Carpenter's "public school employer," Cal. Gov't Code § 3540.1(k), and is responsible for diverting part of his salary to the TEA.  On information and belief, Franklin resides in or around Tustin, California.

29.    Defendant Norm Enfield is sued in his official capacity as the superintendent of Chino Valley Unified School District, which is Plaintiff Angela William's "public school employer," Cal. Gov't Code § 3540.1(k), and is responsible for diverting part of her salary to the ACT.  On information and belief, Enfield resides in or around Chino, California.[1]

30.    Attorney General Xavier Becerra is sued in his official capacity as the state official charged with the enforcement of state laws including California Education Code § 45060.

### STATEMENT OF FACTS

31.    Plaintiff **Bethany Mendez** teaches elementary students with high-functioning disabilities in the Fremont Unified School District. Mendez is a California public school employee exclusively represented by FUDTA.

32.    In May 2018, FUDTA mailed Mendez a dues deduction form. For several weeks, she kept the form without signing it, doubtful the union would represent her interests. FUDTA representatives approached her several times at school, pressuring her to sign the form.

33.    Neither the union representatives, nor her public employer, nor the dues deduction form informed Mendez: of her right to refrain from financially supporting a union; that she was not required to join the union or pay money to the union as a condition of employment; that the union owed her a duty of fair representation even if she chose not to join or give money to the union; or that if she chose to join the union, the union would use a portion of her dues to fund political lobbying.

34.    Believing she had no other option but to financially support the union, on June 4, 2018, Mendez signed the dues deduction form with her local union, FUDTA, authorizing her district to deduct dues from her paycheck.

35.    It was not until Mendez later learned that she did not have to fund the union, that she

---

[1] The Fremont Unified School District, Valley Center-Pauma Unified School District, Hayward Unified School District, Tustin Unified School District, and Chino Valley Unified School District are hereafter collectively referred to as the "Districts."



First Amended Complaint                                                     No: 4:19-cv-01290-YGR

decided to opt out.  On October 12, 2018, in a letter to the president of the CTA, she resigned her union membership and revoked any ostensible authorization to collect union dues from her wages.

36.     On October 31, 2018, and again on November 9, 2018, a representative from FUDTA emailed Mendez, trying to persuade her not to leave the union. Two FUDTA union representatives also came to her classroom and attempted to persuade her to not resign. Mendez told them she did not appreciate being bombarded with pro-union propaganda while at work.

37.     On February 8, 2019, Mendez sent a follow-up email to Victoria Birbeck-Herrera, the president of FUDTA, reiterating her prior revocation of her membership and again expressing her desire that dues deductions cease.

38.     On February 8, 2019, President Birbeck-Herrera confirmed via email that FUTDA would not stop the deduction of dues from her wages, and cited to the dues deduction form Mendez signed which requires she submit a written resignation "not less than thirty (30) days and not more than sixty (60) days before the annual anniversary date" of her signed dues deduction form. President Birbeck-Herrera additionally suggested Mendez set up a meeting with her in April because Mendez would need to provide the union with something additional in order for the union to process her request before June.

39.     Despite Mendez's demands that the dues deductions cease, as of the commencement of this litigation, the Fremont Unified School District continued to deduct dues from Mendez's paycheck.

40.     Despite Mendez's demands that the dues deductions cease, as of the commencement of this litigation,  FUDTA continued to accept Mendez's dues from the District.

41.     Plaintiff **Linda Leigh Dick** is a guidance counselor at Valley Center High School. Leigh Dick is a California public school employee exclusively represented by VCPTA.

42.     Neither the union representatives, nor her public employer, nor the dues deduction form provided by the VCPTA informed Leigh Dick: of her right to refrain from financially supporting a union; that she was not required to join the union or pay money to the union as a condition of employment; that the union owed her a duty of fair representation even if she chose not to join or give money to the union; or that if she chose to join the union, the union would use a

9

1   portion of her dues to fund political lobbying.

2       43.    Believing she had no other option but to financially support the union, Leigh Dick

3   signed a dues deduction form with her local union, VCPTA, in May 2018, authorizing her district to

4   deduct dues from her paycheck.

5       44.    Leigh Dick decided to opt out in November of 2018 because she did not agree with

6   some of the Unions' political objectives. She resigned her union membership and revoked any

7   ostensible authorization to collect union dues from her wages in a letter sent to the president of the

8   CTA on December 13, 2018.

9       45.    On December 17, 2018, the CTA responded to Leigh Dick by letter, stating that any

10  request to change her membership status must be made in writing and hand-delivered or mailed to

11  her local chapter, VCPTA.  In an effort to pressure Leigh Dick into maintaining her membership, the

12  CTA highlighted the benefits that only accompany active membership.

13      46.    Shortly after Leigh Dick sent her request to the CTA, the president of her local chapter,

14  Amanda Walford, told Leigh Dick in person that she could not opt out because she was bound to the

15  dues deduction form until an escape period in May 2019.

16      47.    Nevertheless, Leigh Dick was not convinced active membership in the CTA was

17  worthwhile. She sent an additional letter to the VCPTA president on December 20, 2018.

18      48.    Despite Leigh Dick's demands that the dues deductions cease, as of the

19  commencement of this litigation, the Valley Center-Pauma Unified School District continued to

20  deduct dues from Leigh Dick's paycheck.

21      49.    Despite Leigh Dick's demands that the dues deductions cease, as of the

22  commencement of this litigation, VCPTA continued to accept Leigh Dick's dues from the District.

23      50.    Plaintiff **Audrey Stewart** teaches in the Hayward Unified School District.  Stewart is a

24  California public school employee exclusively represented by HEA.

25      51.    Neither the union representatives, nor her public employer, nor the dues deduction

26  form provided by the HEA informed Stewart: of her right to refrain from financially supporting a

27  union; that she was not required to join the union or pay money to the union as a condition of

28  employment; that the union owed her a duty of fair representation even if she chose not to join or



First Amended Complaint                      No: 4:19-cv-01290-YGR

1  give money to the union; or that if she chose to join the union, the union would use a portion of her

2  dues to fund political lobbying.

3       52.    Believing she had no other option but to financially support the union, Stewart signed a

4  dues deduction form with her local union, HEA, in May 2018, authorizing her district to deduct dues

5  from her paycheck.

6       53.    Stewart decided to opt out of union membership in December 2018, because she did

7  not believe the union represented her interests. She resigned her union membership and revoked any

8  ostensible authorization to collect union dues from her wages in a letter to the president of the CTA

9  on December 18, 2018.

10      54.    On January 7, 2019, the CTA responded by letter to Stewart stating that any request to

11 change her membership status must be made in writing and hand-delivered or mailed to her local

12 chapter, HEA. In an effort to pressure Stewart into maintaining her membership, the CTA

13 highlighted the benefits that only accompany active membership.

14      55.    Stewart sent an additional resignation letter to the HEA.  The president of the HEA and

15 several other union representatives reached out to Stewart multiple times in an effort to persuade her

16 not to resign her membership.

17      56.    The CTA communicated to Stewart, both in person and through text, that it would not

18 stop the deduction of dues from her wages, and cited to the dues deduction form she signed, which

19 required she submit another written resignation "not less than thirty (30) days and not more than sixty

20 (60) days before the annual anniversary date" of her signed dues deduction form.

21      57.    Despite Stewart's demands that the dues deductions cease, as of the commencement of

22 this litigation, the Hayward Unified School District continued to deduct dues from Stewart's

23 paycheck.

24      58.    Despite Stewart's demands that the dues deductions cease, as of the commencement of

25 this litigation, HEA continued to accept Stewart's dues from the District.

26      59.    Plaintiff **Scott Carpenter** teaches in the Tustin Unified School District.  Carpenter is a

27 California public school teacher exclusively represented by TEA.

28      60.    Neither the union representatives, nor his public employer, nor the dues deduction form



First Amended Complaint                                    No: 4:19-cv-01290-YGR

provided by the TEA informed Carpenter: of his right to refrain from financially supporting a union; that he was not required to join the union or pay money to the union as a condition of employment; that the union owed him a duty of fair representation even if he chose not to join or give money to the union; or that if he chose to join the union, the union would use a portion of his dues to fund political lobbying.

61.     Believing he had no other option but to financially support the union, Carpenter signed a dues deduction form with his local union, TEA, on September 26, 2018, authorizing his district to deduct dues from his paycheck.

62.      Carpenter resigned his union membership and revoked any ostensible authorization to collect union dues from his wages in a letter sent to the president of the CTA on November 1, 2018. Carpenter also sent a copy of his letter to the TEA.

63.     On November 5, the president of TEA, Roger Kravigan, emailed Carpenter asking to speak with him about his choice to opt out of the union.  On November 7, 2018, Carpenter responded to Kravigan's email and repeated both his desire to withdraw membership and his revocation of any ostensible authorization to collect dues for both the CTA and TEA.

64.     In an effort to persuade Carpenter not to resign, Kravigan sent an email to Carpenter on November 8, 2018, highlighting the benefits of active membership and asking him to reconsider his decision. Carpenter did not wish to reconsider. Additionally, Kravigan stated the TEA would not recognize Carpenter's revocation of the authority to collect dues until one year after Carpenter signed his dues deduction form.

65.     Despite Carpenter's demands that the dues deductions cease, the Tustin Unified School District has continued to deduct dues from Carpenter's paycheck.

66.     Despite Carpenter's demands that the dues deductions cease, TEA has continued to accept Carpenter's dues from the District.

67.     Plaintiff **Angela Williams** teaches science at the Chino Valley Unified School District. Williams is a public school teacher exclusively represented by ACT.

68.     Neither the union representatives, nor her public employer, nor the dues deduction form provided by ACT informed Williams: of her right to refrain from financially supporting a



First Amended Complaint                                                                    No: 4:19-cv-01290-YGR

1   union; that she was not required to join the union or pay money to the union as a condition of

2   employment; that the union owed her a duty of fair representation even if she chose not to join or

3   give money to the union; or that if she chose to join the union, the union would use a portion of her

4   dues to fund political lobbying.

5       69.     Believing she had no other option but to financially support the union, Williams signed

6   a dues deduction form with her local union, ACT, on June 19, 2018, authorizing her district to deduct

7   dues from her paycheck.

8       70.     Williams resigned her union membership and revoked any ostensible authorization to

9   collect union dues from her wages in a letter sent to the president of the CTA on July 29, 2018.

10      71.     The CTA responded by letter to Williams stating that any request to change her

11   membership status must be made in writing and hand-delivered or mailed to her local chapter, ACT.

12      72.     Williams sent an additional resignation letter to the ACT in August 2018.  The

13   president of the ACT, Brenda Walker, reached out to Williams in September 2018, in an effort to

14   persuade her not to resign her membership.  The president also informed her over the phone that she

15   could not revoke the dues deductions until the anniversary date on her dues deduction form.

16      73.     Despite Williams' demands that the dues deductions cease, as of the commencement of

17   this litigation, the Chino Valley Unified School District continued to deduct dues from Williams'

18   paycheck.

19      74.     Despite Williams' demands that the dues deductions cease, as of the commencement of

20   this litigation, ACT continued to accept Williams' dues from the District.

21      75.     Plaintiff **Stephanie Christie** is a teacher at the Fremont Unified School District.

22   Christie is a public school teacher exclusively represented by FUDTA.

23      76.     Neither the union representatives, nor her public employer, nor the dues deduction

24   form provided by FUDTA informed Christie: of her right to refrain from financially supporting a

25   union; that she was not required to join the union or pay money to the union as a condition of

26   employment; that the union owed her a duty of fair representation even if she chose not to join or

27   give money to the union; or that if she chose to join the union, the union would use a portion of her

28   dues to fund political lobbying.

First Amended Complaint                                              No: 4:19-cv-01290-YGR

77.     Moreover, after providing Christie with a dues deduction form, FUDTA Executive Board Member Jess McCauley specifically told Christie in an October 5, 2018, email that, "[t]his form states that you will remain in the union. Not much else," and "[y]ou are still able to leave the union, at any time, if you wish, but without this card, your membership might drop and then you will have to fill out all new paperwork and rejoin as if you were a new hire. Sounds like a lot of work to me."

78.     Believing she had no other option but to financially support the union, Christie signed a dues deduction form with her local union, FUDTA, on October 12, 2018, authorizing her district to deduct dues from her paycheck.

79.     In an email to FUDTA on March 1, 2019, Christie expressed that the union did not represent her morally, ethically, or professionally. She felt the union leadership acted in an unprofessional and dishonest manner towards its members.

80.     Christie tendered her formal resignation from FUDTA to President Birbeck-Herrera on March 5, 2019, but President Birbeck-Herrera refused to accept Christie's resignation due to alleged "legalities," and asked to meet with Christie.

81.     President Birbeck-Herrera responded to Christie on March 8, 2019, informing Christie that since she signed a dues deduction card as of October 12, 2018, she "will remain a member for the 2018-2019 school year." Additionally, President Birbeck-Herrera wrote, "[w]e are able to receive requests [to resign union membership] two months before your anniversary date, and I will anticipate hearing back in August for this purpose as we will, of course, honor your wishes."

82.     On March 11, 2019, Christie inquired why dues were deducted from her paycheck in September of 2018 if her annual membership date was October 12, 2018. President Birbeck-Herrera responded on March 13, 2019, stating that "[p]rior to October, you were still a member as you had filled out a membership form in effect. [sic] The October date is when you signed an annual form which remains in effect for this school year."

83.     Christie sent a subsequent email to President Birbeck-Herrera on March 12, 2019, and a letter to the CTA President on March 13, 2019, resigning her union membership and revoking any ostensible authorization to collect union dues from her wages.

First Amended Complaint                                                                    No: 4:19-cv-01290-YGR

84.     Despite Christie's demands that the dues deductions cease, as of the date of filing Plaintiffs' First Amended Complaint, the Fremont Unified School district has continued to deduct dues from Christie's paycheck.

85.     Despite Christie's demands that the dues deductions cease, as of the date of filing Plaintiffs' First Amended Complaint, FUDTA has continued to accept Christie's dues from the District.

86.     Plaintiff **Jennifer Gribben** teaches at the Fremont Unified School District. Gribben is a public school teacher exclusively represented by FUDTA.

87.     Neither the union representatives, nor her public employer, nor the dues deduction form provided by FUDTA informed Gribben: of her right to refrain from financially supporting a union; that she was not required to join the union or pay money to the union as a condition of employment; that the union owed her a duty of fair representation even if she chose not to join or give money to the union; or that if she chose to join the union, the union would use a portion of her dues to fund political lobbying.

88.     Gribben signed a dues deduction form with her local union, FUDTA, on August 28, 2018, authorizing her district to deduct dues from her paycheck.  She signed the dues deduction form because a FUDTA representative told her that she would not be able to file a grievance if she was not a member.

89.     Gribben emailed the FUDTA President on March 5, 2019, withdrawing the authorization to collect union dues and emphasizing that the acts of the union no longer aligned with her moral compass.

90.     President Birbeck-Herrera responded on March 8, 2019, clarifying that Gribbens signed an annual dues deduction form as of August 28, 2018, so she would "remain a member for the 2018-2019 school year." Additionally, President Birbeck-Herrera wrote "[w]e are able to receive requests [to resign union membership] two months before your anniversary date, and I will anticipate hearing back in June for this purpose as we will, of course, honor your wishes."

91.     Gribben sent a follow up email to President Birbeck-Herrera on March 12, 2019, again resigning her union membership and revoking any ostensible authorization to collect union dues from



her wages.

92.     President Birbeck-Herrera acknowledged Gribben's follow up email in a March 14, 2019, email stating "[y]ou have signed up for membership for this year, and you have the legal right to withdrawn[sic] as I have outlined."

93.     Despite Gribbens' demands that the dues deductions cease, as of the date of filing Plaintiffs' First Amended Complaint, the Fremont Unified School District has continued to deduct dues from Gribben's paycheck.

94.     Despite Gribbens' demands that the dues deductions cease, as of the date of filing Plaintiffs' First Amended Complaint, FUDTA has continued to accept Gribbens' dues from the District.

95.     On June 27, 2018, the U.S. Supreme Court in *Janus v. AFSCME, Council 31*, held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." 138 S. Ct. at 2486.  The Supreme Court also held that, to be valid, an affirmative agreement to make payments to a union must constitute a waiver of this constitutional right that is "freely given and shown by clear and convincing evidence." *Id*.

96.     Plaintiffs did not provide legally valid affirmative consent for union dues deductions, nor did they knowingly waive their constitutional right not to financially support the Unions. Accordingly, all union dues deductions from Plaintiffs' wages have been unlawful.

97.     Plaintiffs have communicated in writing to the CTA and its local affiliates that they object to union membership and the payment of any union dues.

98.     Plaintiffs Christie and Gribbens have been told by a union representative that they are required to remain members until the 30-day window outlined in their dues deduction form.

99.     Despite the Supreme Court's ruling in *Janus* and Plaintiffs' subsequent objections, up until the Plaintiffs joined this litigation, the Districts continued, and in some cases continue still, to divert a portion of Plaintiffs' wages to the Unions.

100.     Up until the Plaintiffs joined this litigation, the Unions continued, and in some cases continue still, to accept these dues, despite the Supreme Court's ruling in *Janus* and Plaintiffs'

First Amended Complaint                                                    No: 4:19-cv-01290-YGR

subsequent objections.

101.     The Unions told Plaintiffs that the continued dues deductions are lawful because dues deduction forms signed by Plaintiffs purport to irrevocably authorize union dues deductions from Plaintiffs' wages.  The CTA's standard dues deduction language, widely used throughout the state, reads as follows:

> I hereby (1) agree to pay annual dues uniformly required for membership in the Local, CTA, and NEA; and (2) request and authorize my Employer to deduct from my pay in each pay period, and transmit to CTA or its designated agent, a pro rata portion of the annual dues required for membership in the Local, CTA, and NEA, governing bodies and authorize dues payment on a continuing basis, and regardless of my membership status, unless my obligation to do so ends under one of the circumstances below. This agreement to pay dues continues from year to year, regardless of my membership status, unless: I revoke it by sending written notice via U.S. mail to CTA Member Services, P.O. Box 4178, Burlingame, CA 94011, not less than thirty (30) days and not more than sixty (60) days before the annual anniversary date of this agreement; my employment with the Employer ends; or as otherwise required by law.

102.     These dues deduction forms purport to authorize the Districts to deduct union dues from Plaintiffs' wages and remit them to the Unions.  The dues deduction forms state that authorization for the deductions will automatically renew annually unless the employee revokes the authorization between 30 and 60 days prior to the anniversary of the day Plaintiffs signed the authorization.

103.     CTA requires Plaintiffs to continue paying union dues unless and until Plaintiffs avail themselves of a narrow 30-day window in which CTA will honor Plaintiffs' demands that dues deductions cease.  For the remainder of the year, CTA refuses to acknowledge any attempt by Plaintiffs to end the deduction of union dues from their wages.

104.     The dues deduction forms do not contain sufficient notice indicating that a fundamental First Amendment right was being, or potentially being, waived. For instance, the forms do not inform the employee that he or she is not required to join the union or pay money to the union as a condition of employment, or that the union owes him or her a duty of fair representation even if he or she chooses not to join or give money to the union, or that if he or she chooses to join the union, the union will use a portion of the member dues to fund political lobbying.



First Amended Complaint                                                                 No: 4:19-cv-01290-YGR

105.    By signing the dues deduction forms, Plaintiffs did not provide legally valid consent to the payroll deduction of union dues, and they did not waive their constitutional right to not financially support a union.

106.    Absent injunctive relief, the Districts will continue deducting union dues from the wages of Plaintiffs and/or Class members wages pursuant to California Education Code § 45060, over Plaintiffs'/Class members' objections and in violation of their rights.

107.    Absent injunctive relief, the Unions will continue to accept money belonging to Plaintiffs and/or Class members, over Plaintiffs'/Class members' objections and in violation of their rights.

108.    CTA drafted the dues deduction provisions and inserted them into the fine-print of its take-it-or-leave-it form.  Plaintiffs could not bargain over the terms of the dues deduction provisions, and Plaintiffs were not advised to seek counsel and did not seek counsel. Plaintiffs were not made aware, either by the language of the dues deduction provisions, by the Unions, or by their public employers, of their constitutional right to not fund union advocacy or the potential significance of the dues deduction provisions as a waiver of this fundamental right.

109.    To the contrary, several Plaintiffs were expressly misinformed by union officials of the weight, significance, and legal implications of signing the dues deduction forms.

110.    California Education Code § 45060, as well as Plaintiffs' respective CBAs, authorize and compel the Districts to deduct union dues from Plaintiffs' wages and forward them to the Unions, despite the fact that Plaintiffs have not clearly and affirmatively consented to the deductions by waiving the constitutional right to not fund union advocacy.  The statutes and CBA provisions, and Defendants' actions pursuant to them, impermissibly infringe Plaintiffs' First Amendment rights of free speech and free association as secured against state infringement by the Fourteenth Amendment to the U.S. Constitution.

## CLASS ALLEGATIONS

111.    Plaintiffs Bethany Mendez, Linda Leigh Dick, Audrey Stewart, Scott Carpenter, Angela Williams, Stephanie Christie, and Jennifer Gribben (collectively, the "Class Representatives") bring this case as a class action pursuant to Federal Rules of Civil Procedure



23(b)(1)(A) and 23(b)(1)(B), 23(b)(2), and, alternatively, 23(b)(3), for themselves and for all others similarly situated, and any subclasses deemed appropriate by this Court.  The Class and Subclass that the Class Representatives seek to represent are defined as follows:

> **Class:** All individuals: 1) who are public school employees as defined in Cal. Gov't Code § 3540.1(j), and are exclusively represented by CTA and its affilliates; 2) who signed a dues deduction form, before or since *Janus,* that did not contain sufficient notice to obtain clear and affirmative consent for dues deductions and a knowing waiver of the constitutional right not to fund union advocacy; and 3) from whose salaries the public employers deducted or continue to deduct union dues on behalf of CTA and its affiliates. The class includes everyone who comes within the class definition at any time from two years prior to the commencement of this action until the conclusion of this action.

> **Subclass:** All members of the Class who have objected to, or will object to, the payment of any union dues or fees, including by virtue of resigning union membership. The Subclass includes everyone who comes within the Class definition at any time from two years prior to the commencement of this action until the conclusion of this action.

112.    Upon information and belief, there are hundreds, and likely tens of thousands, of Class and Subclass members in varying locations across California. Indeed, according to the California Department of Education, from 2016 to 2017 there were 313,989 teachers in California public schools, each of whom would have been required to pay union dues as a condition of employment. The Class is so large and geographically diverse that joinder is impractical.

113.    There are questions of law and fact common to all Class and Subclass members, and these common questions of law or fact predominate over any questions affecting only individual members of the Class or Subclass.  Common questions include, but are not limited to: whether Defendants violate or violated Class members' First Amendment rights by deducting union dues despite Defendants' failure to obtain clear and affirmative consent for dues deductions; whether Defendants violate or violated  Subclass members' First Amendment rights by deducting union dues despite Defendants' failure to obtain clear and affirmative consent for dues deductions, and despite Subclass members' express objection to dues deductions and union membership.

114.    The Class Representatives' claims are typical of the claims of the Class and Subclass they seek to represent in that the Class Representatives, and all members of the proposed class, suffer



First Amended Complaint

No: 4:19-cv-01290-YGR

or suffered the seizure of union dues by the Districts and in accordance with state law despite Defendants' failure to obtain clear and affirmative consent for dues deductions, and also despite the Class Representatives' and Subclass members' subsequent express objection to dues deductions and union membership.  The Defendants have an identical duty to Class Representatives and all other Class members and Subclass members regarding these claims.

115.    The Class Representatives can and will fairly and adequately represent the interests of the Class and Subclass.

116.    The Districts' and Superintendents' duty to cease the aforementioned union dues deductions, and the Unions' duty to pay back all monies deducted without Plaintiffs' legally valid consent – and, in the case of the Subclass, over Plaintiffs' express objection – applies equally to all Class members and Subclass members. The prosecution of separate actions by individual Class members or Subclass members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

117.    Defendants have acted to deprive Class Representatives, and all Class members and Subclass members, of their constitutional rights on grounds generally applicable to all, thereby making appropriate declaratory, injunctive, and other equitable relief with regard to the Class and Subclass as a whole.

118.    The Class Representatives, Class, and Subclass are represented by the undersigned counsel, of which: Freedom Foundation is a long-established charitable organization experienced in furnishing representation to unionized public and partial-public employees whose constitutional rights have been violated; and Dhillon Law Group Inc. is experienced in class action and complex litigation, as well as procedural and legal issues specific to California jurisdictions.

119.    A class action may be maintained under Rule 23(b)(1)(A) because separate actions by Class members or Subclass members could risk inconsistent adjudications on the underlying legal issues.

120.    A class action may be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of union dues deductions in the aforementioned circumstances, as a practical matter, will be dispositive of the interests of all members of the Class and Subclass.

121.    A class action may be maintained under Rule 23(b)(2) because Defendants acted or refused to act on grounds that apply generally to the Class and Subclass, making injuncting relief and corresponding declaratory relief appropriate respecting the Class and Subclass as a whole.

122.    A class action may be maintained under Rule 23(b)(3) because questions of law or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members in that the important and controlling questions of law and fact are common to all members of the Class and Subclass, *i.e.*, whether the aforementioned dues deductions violate the First Amendment rights of Class members and/or Subclass members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in as much as the individual Class members and Subclass members are deprived of the same rights by Defendants' actions, differing only in the amount of money deducted – which is, for legal purposes, immaterial. The amount of money deducted is known to Defendants and easily calculated from Defendants' business records.  The limited amount of money involved in the case of each individual's claim (union dues deductions without valid consent; union dues deductions since each Subclass member objected to union membership and the payment of union dues) would make it burdensome for the class members to maintain separate actions.

123.    The illegal actions taken by Defendants were taken pursuant to the same statutes, dues deduction forms and similar CBAs, and constitute a concerted scheme resulting in the violation of the rights of Plaintiffs, Class members, and Subclass members. Additionally, the affiliation among the Defendants presents an organizational structure which makes it expedient for the named Plaintiffs and members of the Class and Subclass to proceed against all named defendants.

## CAUSES OF ACTION

124.    Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

125.    Defendants act jointly and under color of state law by deducting, causing the deduction of, or collecting union dues from the wages of Plaintiffs and the members of the Class and Subclass, or from having done these things in the past.

126.    The First Amendment prohibits the government and unions from seizing union dues from teachers without their clear and affirmative consent and a valid waiver of their First Amendment

1   rights. *See Janus*, 138 S. Ct. at 2486.

2        127.    A valid waiver of First Amendment rights requires clear and compelling evidence that

3   the putative waiver was voluntary, knowing, and intelligent and that enforcement of the wiaver was

4   not against public policy. Defendants bear the burden of proving that these criteria are satisfied.

5        128.    The dues deduction forms Plaintiffs signed do not constitute clear and compelling

6   evidence that Plaintiffs voluntarily, knowingly, or intelligently waived their First Amendment rights

7   to refrain from subsidizing the Unions' speech because, among other reasons, the forms do not notify

8   teachers that they have a First Amendment right not to financially support the union or state that the

9   teachers agree to waive that right.

10        129.    Plaintiffs did not voluntarily, knowingly, or intelligently waive their First Amendment

11   rights to refrain from subsidizing the Unions' speech.

12                 **FIRST CLAIM FOR RELIEF**

13        **Violation of the First Amendment (42 U.S.C. § 1983)**
            **(By Plaintiffs, Class, and Subclass Against all Defendants)**

14

15   ***Deducting dues from Plaintiffs' wages pursuant to California Education Code § 45060 violates the First Amendment to the United States Constitution.***

16

17        130.    Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

18        131.    California Education Code § 45060, on its face and as applied, violates Plaintiffs' First

19   Amendment rights, as applied to the states by the Fourteenth Amendment, because the statute

20   authorizes and compels the Districts and Superintendents to deduct union dues from Plaintiffs' wages

21   without clear and compelling evidence that they waived their First Amendment rights to refrain from

22   subsidizing the union and its speech.

23        132.    Defendants' enforcement of California Education Code § 45060, without Plaintiffs'

24   consent and clear and compelling evidence that they waived their First Amendment rights to refrain

25   from supporting the union and its speech, deprives Plaintiffs and Class members of their First

26   Amendment rights to free speech and association, as secured against state infringement by the

27   Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

28        133.    California Education Code § 45060 is unconstitutional under the First Amendment, as

First Amended Complaint               No: 4:19-cv-01290-YGR

DILLON LAW GROUP INC.

secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, as applied or enforced against any teacher in the absence of clear and compelling evidence that the teacher waived his or her rights to refrain from subsidizing the union and its speech.

134.    Consent to fund union advocacy cannot be presumed, Plaintiffs did not waive their constitutional right to refuse to fund union advocacy, and they expressly objected to the payment of union dues.

135.    In addition, Subclass members also expressly objected to the payment of union dues, and further objected to union membership.

136.    California Education Code § 45060 does not serve a compelling state interest and is not narrowly tailored to minimize the infringement of Plaintiffs' and Class members' First Amendment rights.

137.    Plaintiffs, Class members, and Subclass members have been irreparably injured by a violation of their First Amendment rights, for which there is no adequate remedy at law. As a result, Plaintiffs seek preliminary and permanent injunctive relief, declaratory relief, damages, attorneys' fees pursuant to 42 U.S.C. § 1988, and costs.

**SECOND CLAIM FOR RELIEF**
**Violation of the First Amendment (42 U.S.C. § 1983)**
**(By Plaintiffs, Class, and Subclass Against the Unions and the Superintendents)**

***Deducting dues from Plaintiffs' wages pursuant to Plaintiffs' CBAs violates the First Amendment to the United States Constitution.***

138.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

139.    The provisions of the CBAs entered between the Superintendents and Plaintiffs' local exclusive representatives, which restrict Plaintiffs' rights to revoke the authority to collect union dues, on their face and as applied, violate Plaintiffs' and Class members' First Amendment rights as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

140.    Plantiffs and Class members have a constitutional right to not associate with an exclusive representative and to not support, financially or otherwise, petitioning and speech.  The

First Amended Complaint                                                                 No: 4:19-cv-01290-YGR

Plaintiffs' CBAs authorize the Districts to divert a portion of Plaintiffs' wages to the Unions, even though Plaintiffs have not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy.

141.    Consent to fund union advocacy cannot be presumed, nor may a waiver of the constitutional right to not fund union advocacy be presumed.

142.    Plaintiffs' CBAs do not serve a compelling state interest, and the terms of the CBAs are not narrowly tailored to minimize the infringement of Plaintiffs' and Class members' First Amendment rights.

143.    Plaintiffs, Class members, and Subclass members have been irreparably injured by a violation of their First Amendment rights, for which there is no adequate remedy at law. As a result, Plaintiffs seek preliminary and permanent injunctive relief, declaratory relief, damages, attorneys' fees pursuant to 42 U.S.C. § 1988, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, on behalf of themselves and all those similarly situtated, for the following:

i.   **Declaratory Judgment**: for entry of a Declaratory Judgment that California Education Code § 45060 and the Union's dues deduction enrollment practices authorized thereby, on their face and as applied, violate the First Amendment to the United States Constitution, as secured against state infringement by the Fourteenth Amendment to the United States Constitution, because they permit and compel public employers to deduct union dues from the wages of Plaintiffs, Class members, and Subclass members, despite the absence of clear and affirmative consent to the deductions by waiving the constitutional right to not fund union advocacy, and/or because these laws and practices additionally force Plaintiffs and Subclass members to maintain union membership and subject themselves to dues deductions over their objection;

ii.  **Declaratory Judgment:** for entry of a Declaratory Judgment that the Superintendents' deduction of monies from the wages of Plaintiffs, Class members, and Subclass members, without clear and affirmative consent to the deductions by waiving the constitutional right to not fund union advocacy, is illegal and unconstitutional;

iii. **Injunctive Relief:** for issuance of temporary, preliminary, and permanent injunctive relief, enjoining Defendants from engaging in any activity this Court declares illegal or likely illegal, including but not limited to: 1) the deduction of union dues from the wages of Plaintiffs, Class members, and Subclass members without first obtaining legally valid consent to such deductions, including, *inter alia,* notice to the employee that he or she is not required to join the union or pay money to the union as a condition of employment; notice that the union owes him or her a duty of fair representation even if he or she chooses not to join or give money to the union; notice that if he or she chooses to join the union, the union will use a portion of the member dues to fund political lobbying; and 2) the continued enforcement of California Education Code § 45060 and the Union's dues deduction enrollment practices pursuant thereto;

iv. **Compensatory Damages for the Class:** for entry of a judgment requiring Defendant Unions to refund any union dues taken without valid consent from Plaintiffs' and Class members' wages going back to the extent permitted by the relevant statute of limitations or the date each Plaintiff or Class member began employment, whichever is more recent, as well as nominal damages, and restitution;

v. **Compensatory Damages for the Subclass:** for entry of a judgment requiring Defendant Unions to refund any union dues taken from Plaintiffs' and Subclass members' wages since they objected to the payment of any union dues or fees, including by virtue of resigning union membership, as well as nominal damages, and restitution;

vi. **Costs and attorneys' fees:** for an award to Plaintiffs, Class members, and Subclass members of their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988; and

vii. **Other relief:** for such other and additional relief as the Court may deem just and proper.

//



First Amended Complaint

1

**DEMAND FOR JURY TRIAL**

2

      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in

3

this action of all issues so triable.

4

5

Dated: June 11, 2019                                  Respectfully submitted,

6

                                      By:  /s/ Harmeet K. Dhillon

7

                                      DHILLON LAW GROUP INC.

8

Harmeet K. Dhillon
Krista L. Baughman

9

Gregory R. Michael

10

Dhillon Law Group Inc.
177 Post Street, Suite 700

11

San Francisco, California 94108

12

*Attorneys for Plaintiffs and the Proposed Class
and Subclass*

13

FREEDOM FOUNDATION

14

Mariah Gondeiro, Cal Bar No. 323683
Karin Sweigart, Cal Bar No. 247462

15

Freedom Foundation

16

PO Box 552
Olympia, WA  98507

17

18

*Attorney for Plaintiffs and the Proposed Class
and Subclass*

19

20

21

22

23

24

25

26

27

28



First Amended Complaint                                  No: 4:19-cv-01290-YGR